IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOEY TORREY,                                              No. 2:12-CV-1457-JAM-CMK-P

        Plaintiff,

    vs.                                                          <u>ORDER</u>

LOVETT, et al.,

        Defendants.

_____/

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1).

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  <u>See</u> <u>McHenry v. Renne</u>,

1  84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied
2  if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon
3  which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must
4  allege with at least some degree of particularity overt acts by specific defendants which support
5  the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is
6  impossible for the court to conduct the screening required by law when the allegations are vague
7  and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: Lovett, contract physician; Jackson, associate warden; Williams, chief medical officer; Heatley, supervising medical officer; Todd, physician's assistant; Stahl, physical therapist; and Smith, physician.  Plaintiff alleges that, in November 2009, he was sent to Mark Twain Saint Joseph's Hospital for a total right knee replacement, performed by defendant Lovett who is a contract orthopedic specialist.  Plaintiff states that, "[u]pon returning from the surgery and the years that followed," he experienced "unwarranted complications and side effects."  Plaintiff next states that, on July 17, 2009, he wrote to defendant Jackson explaining that he was still unable to sit or bend his knee without pain.[1]  In February 2010, plaintiff was returned to the outside hospital for a "clean out" procedure to address problems with the new knee.  According to plaintiff, "[n]ot even ten days later" he wrote defendant Jackson again, this time complaining that B-Facility medical personnel, including defendant Todd, were negligent and indifferent to plaintiff's post-operative care.  Plaintiff states that in the days after his return from the February 2010 surgery prison staff refused to give plaintiff a "cell feed" chrono, which he says was necessary to avoid having to walk on the painful knee.  He states that defendant Todd laughed at him and taunted him to

---

[1]  It is unclear how plaintiff could have written defendant Jackson in July 2009 concerning a surgery he alleges to have occurred in November 2009.

"box" for the chrono. Plaintiff states that he never received a "cell feed" chrono and "no one examined Plaintiff's wound to see if it was healing properly . . . nothing."

Next, plaintiff states that he wrote defendant Heatley on December 28, 2010, complaining that the knee replacement procedure had failed and that he was still experiencing pain. Plaintiff accused defendant Lovett of failing to correctly perform the November 2009 procedure.

Plaintiff states that he submitted a prison grievance concerning the allegedly botched surgery on January 1, 2011, and that defendant Heatley responded on January 30, 2011, by recommending that plaintiff "continue the current work which is planned with the podiatrist and continued physical therapy." According to plaintiff, continued physical therapy would cause additional damage.

According to plaintiff, "corrective surgery" occurred on April 4, 2012, performed at San Joaquin General Hospital by Dr. Manning. Plaintiff states that Dr. Manning prepared a report following the surgery in which the doctor noted "significant hypertrophic bone in the posterior medial aspect of the tibia just posterior to the tibial base plate." Plaintiff claims that Dr. Manning's report is proof of defendant Lovett's negligence in the November 2009 surgery.

On April 25, 2012, defendant Stahl, a physical therapist, wrote plaintiff a chrono "stipulating that Plaintiff did not need any assistance to get around the institution. . . ." According to plaintiff, he did in fact need assistance, particularly given the April 4, 2012, operation. For this reason, plaintiff also states that defendant Stahl was incorrect in stating that plaintiff had no job restrictions. Plaintiff states that, on May 2, 2012, defendant Smith denied his request for off-site physical therapy. On May 7, 2012, defendant Smith wrote a chrono indicting that plaintiff was capable of "full duty."

Plaintiff claims that defendant Lovett committed "medical malpractice, gross negligence, and professional negligence" in connection with the November 2009 procedure. He claims that defendants Jackson, Williams, Heatley, Smith, Stahl, and Todd were "negligence and

gross negligent [sic]" for failing to act to address his constant pain "not to mention when said Defendants ignored Plaintiff's physical evidence of Plaintiff's right knee 'popping' and the patella being able to rotate 360 degrees." Plaintiff also claims that defendant Heatley was deliberately indifferent to his care following the 2009 surgery. According to plaintiff, "[b]y Heatley's incompetence, negligence, and gross negligence, Plaintiff has been subject to many years of unnecessary pain, suffering, and further injury." Plaintiff claims that defendant Smith was deliberately indifferent by ignoring his doctor's recommendation for off-site physical therapy. Plaintiff states that Smith is further liable for stating that he was capable of full work duty. He also claims that defendant Stahl is liable for failing to "give the plaintiff a massage to plaintiff's right knee."

## II. DISCUSSION

Plaintiff's claims as against each defendant are summarized as follows:

| | |
|---|---|
| Lovett | – Performed total right knee replacement in November 2009; Lovett committed "medical malpractice, gross negligence, and professional negligence" in connection with the November 2009 procedure. |
| Jackson | – Plaintiff wrote to defendant Jackson explaining that he was still unable to sit or bend his knee without pain; plaintiff wrote defendant Jackson again, this time complaining that B-Facility medical personnel were negligent and indifferent to plaintiff's post-operative care. |
| Williams | – Williams was "negligence and gross negligent [sic]" for failing to act to address his constant pain "not to mention when said Defendant[] ignored Plaintiff's physical evidence of Plaintiff's right knee 'popping' and the patella being able to rotate 360 degrees." |
| Heatley | – Plaintiff wrote defendant Heatley on December 28, 2010, complaining that the November 2009 knee replacement procedure had failed and that he was still experiencing pain; Heatley responded to plaintiff's inmate grievance on January 30, 2011, by recommending that plaintiff "continue the current work which is planned with the podiatrist and continued physical therapy"; plaintiff also claims that defendant Heatley was deliberately indifferent to his care following the 2009 surgery; according to |

| | | |
|---|---|---|
| | | plaintiff, "[b]y Heatley's incompetence, negligence, and gross negligence, Plaintiff has been subject to many years of unnecessary pain, suffering, and further injury." |
| | Todd | – According to plaintiff, B-Facility medical personnel, including defendant Todd, were negligent and indifferent to plaintiff's post-operative care; plaintiff claims that defendant Todd was "negligence and gross negligent [sic]" for failing to act to address his constant pain "not to mention when said Defendants ignored Plaintiff's physical evidence of Plaintiff's right knee 'popping' and the patella being able to rotate 360 degrees." |
| | Stahl | – On April 25, 2012, defendant Stahl, a physical therapist, wrote plaintiff a chrono "stipulating that Plaintiff did not need any assistance to get around the institution"; according to plaintiff, he did in fact need assistance, particularly given the April 4, 2012, operation; for this reason, plaintiff also states that defendant Stahl was incorrect in stating that plaintiff had no job restrictions; defendant Stahl was "negligence and gross negligent [sic]" for failing to act to address his constant pain "not to mention when said Defendants ignored Plaintiff's physical evidence of Plaintiff's right knee 'popping' and the patella being able to rotate 360 degrees." |
| | Smith | – Plaintiff states that, on May 2, 2012, defendant Smith denied his request for off-site physical therapy; on May 7, 2012, defendant Smith wrote a chrono indicting that plaintiff was capable of "full duty"; defendant Smith was "negligence and gross negligent [sic]" for failing to act to address his constant pain "not to mention when said Defendants ignored Plaintiff's physical evidence of Plaintiff's right knee 'popping' and the patella being able to rotate 360 degrees." |

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only

when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In this case, the court finds that plaintiff's complaint suffers a number of defects, discussed below:

### A.   **Defendant Lovett**

Defendant Lovett performed plaintiff's total knee replacement in November 2009. According to plaintiff, Dr. Lovett was negligent in performing the surgery which plaintiff characterizes as a failure. As stated above, however, negligence cannot form the basis of liability under § 1983. Defendant Lovett should be dismissed.

### B.   **Defendants Jackson, Heatley, and Williams**

According to plaintiff, these individuals are supervisory personnel. Plaintiff claims that these defendants are liable because they were made aware of plaintiff's medical problems but did nothing. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the

offensive act.  See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."  Iqbal, 129 S.Ct. at 1948.

In this case, plaintiff has not alleged how the personal involvement of these three supervisory defendants contributed to the alleged constitutional violations.  Plaintiff will be provided leave to amend.

### III.  CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading. See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that plaintiff may file a first amended complaint within 30 days of the date of service of this order.

DATED: October 19, 2012

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE